## ZARKOWSKI v. SCHROEDER.

(Supreme Court, Appellate Division, Second Department. April 25, 1902.)

1. MORTGAGE—TITLE—INVALID CONVEYANCE—MERGER.

Where the executor of a mortgagor makes an invalid conveyance of the mortgaged property to the mortgagee, and the latter conveys to defendant, but the mortgage is neither assigned nor canceled, there is not a merger of the mortgage in the defective conveyance, which will defeat the title of defendant acquired through a foreclosure sale under the mortgage.

2. SAME—FORECLOSURE SALE—VALIDITY OF TITLE—GOOD-FAITH PURCHASER.

Code Civ. Proc. § 445, authorizes a defendant, served by publication, or his representatives, to defend at any term within seven years, but provides that the title to property purchased in good faith shall not be affected by the provision. A mortgagee procured an invalid conveyance of the mortgaged property from the executor of the mortgagor, and conveyed the property to defendant, and the mortgage was afterwards foreclosed, notice being given by publication, and the property purchased by defendant. Held, that the mere fact that defendant purchased at the foreclosure sale to strengthen his invalid title was not, in the absence of evidence of bad faith, sufficient to prevent him from being a good-faith purchaser at the foreclosure sale, and therefore the heirs of the mortgagor could not attack the title so derived.

3. COVENANT OF SEISIN—ACTION FOR BREACH—EVIDENCE—BURDEN OF PROOF.
    In an action by a vendee against his vendor, who acquired title at a
    mortgage foreclosure sale in a suit in which the mortgagor was served
    by publication, the vendee has the burden of showing that defendant
    was a bad-faith purchaser, which would enable the mortgagor or his
    representatives to attack the title within seven years, under Code Civ.
    Proc. § 445, authorizing a defendant served by publication, or his repre-
    sentatives, to defend at any time within seven years, but providing that
    the title to property purchased in good faith shall not be affected thereby.
4. SAME.
    The plaintiff in an action for the breach of a covenant of seisin has the
    burden, under the reformed procedure, to prove such breach.
5. SAME.
    When a vendee accepts a deed from a vendor who acquired title
    through a mortgage foreclosure sale, the fact that the title may be
    subject to attack by heirs of the mortgagor is not sufficient to authorize
    judgment for breach of covenant of seisin, when it appears that the
    existence of such heirs is uncertain.
    Goodrich, P. J., dissenting.

Action by Stanislaw Zarkowski against Sophia L. Schroeder for
breach of covenant of seisin. Case submitted on agreed facts.
Judgment for defendant.

Argued before GOODRICH, P. J., and BARTLETT, JENKS,
WOODWARD, and HIRSCHBERG, JJ.

Maurice S. Hyman, for plaintiff.
John H. Steenwerth, for defendant.

HIRSCHBERG, J. When this case was before the court the first
time, the submission was dismissed because there was no statement
or agreement upon certain facts deemed material, and because there
was no agreement for the rendition of judgment in case the con-
troversy was determined in favor of the defendant. See Zarkowski
v. Schroeder, 60 App. Div. 457, 69 N. Y. Supp. 893. The defects
then pointed out have since been remedied, and the case has again
been submitted.

The controversy turns upon the sufficiency of the defendant's title
to certain real estate in Queens county on June 4, 1897, on which
date she conveyed it to the plaintiff by warranty deed. The deed
was duly recorded in that county on July 2d following. Since that
time, but at what date does not appear, the plaintiff attempted to
sell the property, and a contract for that purpose was duly executed,
but the purchaser or purchasers refused to take the title upon the
ground that the same was "defective, unmarketable, and worthless."
The parties seek by this submission to obtain an adjudication upon
the validity of the title. It is admitted that on August 7, 1869, the
title to the property in question was vested in Joseph H. Van Mater
and wife, who then conveyed it by full-covenant warranty deed to
John Frederick, and took back from him a purchase money mortgage
for $441, due August 7, 1872, and recorded August 18, 1869. The
mortgage was subsequently assigned by various mesne transfers,
the last being for full value to Andrew J. Smith, on November 22,
1890. Frederick died in 1892, and on December 1st of that year
Theodore Huhn, claiming to be his executor with power to convey

real estate, conveyed the property in question to the said Andrew J. Smith, by deed dated that day, and recorded December 5, 1893. Smith conveyed the property to the defendant by full covenant warranty deed, dated May 7, 1894, and recorded July 13, 1894. In 1896 Smith instituted an action in the supreme court for the foreclosure of the purchase money mortgage, and a decree of foreclosure and sale was entered on December 18, 1896, under which the defendant purchased the property, receiving a sheriff's deed dated April 1, 1897, and recorded April 18, 1897. In such action, service of the summons was directed by publication upon affidavits showing that Frederick died unmarried, and, so far as known, without heirs at law or next of kin, and service was duly made according to the terms of the order upon the people of the state, upon Huhn, and upon the unknown defendants, viz., "the widow, heirs at law, and devisees of John Frederick, deceased, if any there be." It is conceded by both parties to this controversy that the deed to Smith from Huhn, as alleged executor of Frederick, conveyed no title, and under the circumstances the plaintiff cannot be permitted to now assert, as against the defendant, that the purchase money mortgage in Smith's hands merged in the defective title, so that it was extinguished by the subsequent conveyance by Smith to the defendant. Whether a worthless title will ever be held to absorb a valid mortgage by operation of merger need not be determined. Smith, by foreclosing, and the defendant, by purchasing at the foreclosure sale, have both treated the mortgage as valid and outstanding. As a matter of fact, the mortgage was neither canceled nor assigned, and it is well settled that in equity the union of legal and equitable estates in the same person does not effect a merger unless such was the intention of the parties, and justice and equity require it. Sheldon v. Edwards, 35 N. Y. 279; Smith v. Roberts, 91 N. Y. 470; Asche v. Asche, 113 N. Y. 232, 21 N. E. 70.

The only remaining question necessary to consider relates to the effect of the foreclosure sale. The defendant was not a party to that suit, the theory of the proceedings being apparently that her deed was invalid, and that the title to the real estate vested, on Frederick's death, in his heirs or devisees, if any. By virtue of the provisions of section 445 of the Code of Civil Procedure his representatives (the service having been made by publication) must be allowed to defend at any time within seven years after the filing of the judgment roll. But this section contains the further provision that the title to property sold to a purchaser in good faith shall not be affected thereby. There is no statement in the record indicating that the defendant was a purchaser in bad faith, or that she purchased with knowledge of any fact in reference to the title or to the foreclosure proceedings which was not known to every one constructively. There is no suggestion of fraud or collusion, or that she knew of the existence of heirs or devisees, or, indeed, that any do exist. She may have purchased in aid of her defective title, and doubtless did, but that fact would not of itself render her a purchaser in bad faith. The burden is on the plaintiff to prove that she was not a purchaser in good faith. The action is to be regarded as

one for damages for a breach of the covenant of seisin, and not an equity action for rescission, and the burden is now on the plaintiff to prove such breach affirmatively. Under the common-law rules of pleading, the plaintiff could assign the breach generally by merely negativing the words of the covenant, the defendant could plead that he was seised, and issue would be joined by a replication reiterating the denial of seisin without specifying defects of title or averring a title paramount. The affirmative of the issue was then with the defendant, who was bound to prove performance of the covenant, or, in other words, to explain his title, and, if no evidence was introduced, the plaintiff was entitled to judgment. The plaintiff was presumed to be ignorant of the real state of the title, while the grantor retained in his possession the evidences of it. Abbott v. Allen, 14 Johns. 248. The rule was in harmony with a system of conveyancing under which land titles were not matters of public record, but each landowner had in his own hands the muniments of his title accessible only to the owner of the estate. Since the passage of the recording acts, resulting in the preservation of a public record of all matters of title, a different rule has prevailed, and the affirmative of the issue is with the plaintiff, by whom the specific breach must be both alleged and proved. Woolley v. Newcombe, 87 N. Y. 605.

The record presents other irregularities to which our attention is called by the briefs, but nothing tending to prove that the title is in fact defective. On the main question presented, aside from the protection afforded by section 445 of the Code, supra, it is quite obvi-ous that the danger to be apprehended from possible but undisclosed heirs or devisees of Frederick is more apparent than real, and, as was said in Wilson v. Parshall, 129 N. Y. 223, 227, 29 N. E. 297, 298:

"There may be an apparent cloud upon the title to real estate conveyed by a full covenant deed, and the circumstances may be such that a court of equity would not compel a purchaser under an executory contract to take a deed; yet if he takes the deed, and then sues for a breach of the covenants, the suit is well defended by proof satisfactory to the court, upon all the evidence submitted, that the title was in fact not defective. Evidence which will defend an action for specific performance is not always sufficient to maintain an action for breach of covenants. The one action may concern apparent defects in the title, and the other must concern real defects."

We think that under the circumstances, upon the facts contained in the submission, the defendant is entitled to judgment, without costs. All concur, except GOODRICH, P. J., who dissents.

GOODRICH, P. J. (dissenting). The question involved in this submission of controversy is whether the defendant had a clear and marketable title to four lots of land at Maspeth, Long Island, deeded by her to the plaintiff. If she had not, a judgment must be rendered for the plaintiff. If she had such clear and marketable title, a judgment must be rendered for the defendant.

The defendant, as stated in the brief of her counsel, does not claim title otherwise than through the foreclosure of a purchase money mortgage executed on August 7, 1869, by John Frederick to Joseph H. Van Mater, simultaneously with a deed given by Van Mater and

wife to Frederick. Van Mater, in 1870, assigned this mortgage to Mallory and Blackwell, who assigned it to Van Oehsen, who assigned it to Andrew J. Smith in November, 1890. In May, 1894, Smith deeded the premises to the defendant. In July, 1896, Smith commenced an action to foreclose the mortgage against "Theodore Huhn, and the widow, heirs at law, and devisees of John Frederick, deceased, if any there be, whose names are unknown, and who cannot be ascertained so as to be named by the plaintiff,—the said John Frederick having died at the city of New York in or about the year 1892,—and the people of the state of New York." The complaint alleged that Frederick was the owner of the premises at the time of his death; that he left a will disposing of personal property only, in which Huhn was executor and sole legatee, and that the will had never been offered for probate; that Frederick was never married, left no heirs, and never devised or disposed of the property. An order for the service of the summons upon Huhn and the unknown defendants by publication was made in 1896, the affidavit stating that Huhn was not a resident of this state, and that the names and residences of the widow and heirs of Frederick were unknown to, and could not with due diligence be ascertained by, the plaintiff. The summons was duly published, and a copy of the summons, complaint, and order was mailed to the last known residence of Huhn, in New Jersey. An order of reference was made, and testimony taken. The referee reported that Frederick died in 1892, seised of the premises, leaving a will in which Huhn was named as sole executor, that the will was never offered for probate, and that, as far as could be ascertained, Frederick was never married and left no heirs. A judgment of foreclosure was entered, and in 1897 the sheriff conveyed the premises to the defendant. She conveyed them to the plaintiff by a full covenant and warranty deed on June 4, 1897.

The record before us reads as follows:

"Sixth. The question in controversy between the parties is as follows: Q. Did the defendant by her warranty deed of June 4, 1897, give to the plaintiff a clear and marketable title to the premises mentioned herein? The plaintiff claims that the title is not clear and marketable. The defendant claims to the contrary of said proposition. And now the parties agree that the validity of the defendant's title to the premises mentioned in the complaint in fee simple, and free and clear of all incumbrances, at the time of said conveyance, be left to this court for adjudication; that, in the event that the title be not clear, the plaintiff shall be awarded judgment for the purchase price paid and the damages sustained; that the deed from the defendant to the plaintiff be canceled, and a reconveyance of the property be made by plaintiff to defendant; and that the purchase-money mortgage be canceled and satisfied by the defendant on record, and the bond of the plaintiff given therewith be canceled and returned; and that, in the event that the title be clear, judgment be rendered for the defendant."

As already stated, the defendant claims title solely through the foreclosure. Her title involves the question whether the mortgage merged in the fee. The mortgage was assigned to Smith on November 22, 1890. In December, 1892, Huhn, describing himself to be the executor of the will of John Frederick, of New York, deceased, conveyed the premises to Smith. He alleges that he was empowered to convey. But there is not in the indices or other records of the

75 N.Y.S.—65

surrogate of New York county any reference to any proceedings to probate the will, or to any administration of the estate. In May, 1894, Smith deeded to the defendant. The plaintiff argues that although this deed of Huhn was in fact a nullity because Huhn had no title, still, as Huhn, under color of title, conveyed the premises to Smith, and Smith conveyed to the defendant, Smith could not set up that the title which he conveyed was invalid, and an estoppel in pais is thereby created. But this estoppel cannot affect the rights of the heirs, if any, of Frederick. Both parties concede in their briefs that the Huhn deed conveyed no valid title to Smith. We are therefore not required to decide this question; but, assuming for the purposes of this controversy that the concession is correct, it would seem to follow that the mortgage did not merge in a fee which the parties agree was not conveyed.

The sole remaining question, therefore, is whether the foreclosure proceedings and the sheriff's sale and conveyance thereunder were regular. The submission states that the plaintiff's attorney in the foreclosure action testified that he filed a report of sale, and it is conceded that such a report was filed, though none can be found of record after diligent search, but no order confirming the sale is referred to by either party. It is somewhat singular that the defendant, who held a record title to the premises by the deed from Smith at the time the foreclosure suit was instituted, was not made a party defendant, but this is probably immaterial, as she became the purchaser at the foreclosure sale. If Frederick died intestate, leaving heirs, the property vested in them. If he died intestate, leaving no heirs, the title to the premises vested in the state of New York. The people were duly served with the summons. Section 445 of the Code of Civil Procedure provides that where a summons is served by publication, and the defendant does not appear, he or his representative must, on good cause shown, be allowed to defend within seven years after final judgment, where personal service has not been made. Under this provision the heirs of Frederick might be allowed to appear as defendants and attack the validity of the mortgage. The section also provides that the title to property sold to a purchaser in good faith shall not be affected thereby. There is no statement in the record, nor any fact whereby it can be found whether or not the defendant was a purchaser in good faith. To my mind, the inference from the circumstances is rather against good faith, if any inference can be drawn. The title seems to me to be clouded and doubtful. Consequently it is impossible to give force to the operation of this excepting provision of section 445, or to decide that the defendant has furnished a "clear and marketable title." Neither am I satisfied that due proof of the facts alleged in the complaint was made before the referee in foreclosure. It appeared by the testimony of Smith only that the mortgage had been burned; that he had made a search for Frederick's will, and that none could be found (when or where he searched does not appear); that Huhn informed him that Frederick died in 1892, and that the will was never probated; that he was never married, and left no heirs at law. Here was purely hearsay evidence, which was not a sufficient basis for the referee's

report. Besides, the mortgage, having been executed in 1869, was more than 20 years old, and there was no allegation in the complaint in the foreclosure suit, nor any evidence on the reference, showing any payments on account of either principal or interest. This being a submission, the defendant is not required to plead the statute of limitations. The presumption, therefore, is that the mortgage. being more than 20 years old, and no interest paid, was outlawed. Seven years have not elapsed since the final judgment, and it is still open to attack by the heirs of Frederick, if any exist. I think that under such circumstances the title is not clear and marketable, and that the plaintiff is entitled to judgment as provided in the submission, without costs.