GEORGE M. HART et al. v. G. M. ELDRED.
Appellant.

**Division One, March 2, 1915.**

1. **COTENANCY: Adverse Possession.** As a general rule, the possession of one tenant in common is the possession of all; but if he deals with the property as absolute owner, knowingly encumbers it by mortgage or deed of trust, and by his acts conveys the impression that he is holding adversely to his cotenants, he may acquire a good title by adverse possession.

2. ———: ———: **Evidence.** The evidence, in a suit to ascertain and determine title to land, brought by tenants in common against one claiming through conveyances and encumbrances made by a cotenant, *held* not to show title in the defendant by adverse possession.

Appeal from Camden Circuit Court.—*Hon. C. H. Skinker*, Judge..

AFFIRMED.

*W. S. Jackson* and *Roy D. Williams* for appellant.

(1) The court erred in finding for the plaintiffs, as the evidence clearly shows that John H. Hart, under and through whom the defendant claimed his title, had become the absolute owner of the land in controversy, and by his repeated acts of ownership thereof and his continuous use and appropriation of the rents and profits for practically 25 years had ousted the plaintiffs and each of them and had acquired thereby the absolute right to the land under the ten-year Statute of Limitations. Hendricks v. Musgrove, 183 Mo. 311; Papeyre v. Paul, 47 Mo. 586; Peck v. Lockridge, 97 Mo. 560; Warfield v. Lindell, 38 Mo. 562; 2 Am. & Eng. Ency. of Law (1 Ed.), pp. 1116, 1117; Dunlap v. Griffith, 146 Mo. 293.    (2) The four mort-

gages placed upon the land by John H. Hart in his lifetime and recorded in the deed records of Camden county, imparted the same notice and were as effective in all respects to constitute an ouster of his co-tenants, as though he had placed of record the same number of warranty deeds. Cockrell v. Baine, 94 Mo. 444; Blanchard v. Haseltine, 79 Mo. App. 248; Boyd v. Haseltine, 110 Mo. 203.

*Sid C. Roach* and *C. H. Shubert* for respondents.

(1) The record title of plaintiffs being clear, the burden is on defendant to establish his alleged countervailing title under adverse possession by a preponderance of the evidence. Douthett v. Stinson, 63 Mo. 268; Long v. McDow, 87 Mo. 203; Rodney v. McLaughlin, 97 Mo. 426. (2) Possession of real estate may be open and notorious and still not adverse, but under license or subordination no matter how long continued. Crawford v. Ahrens, 103 Mo. 88; Handlan v. McManus, 100 Mo. 124; Long v. McDow, 87 Mo. 203; Seibert v. Hope, 221 Mo. 630; Feller v. Lee, 225 Mo. 319; Sanford v. Kern, 223 Mo. 616. (3) Mere claim to land will not ripen into title, however long and persistent. Golterman v. Schiermeyer, 125 Mo. 291. (4) Possession apparently adverse will not be presumed to be continuous. Lynde v. Williams, 68 Mo. 360.

RAILEY, C.—The above named plaintiffs in May, 1911, filed in the Camden Circuit Court their petition to quiet title to the southwest quarter of the northeast quarter and the north quarter of the northeast quarter of the southwest quarter of section 25, township 38, of range 19, containing 50 acres more or less. It is averred in the petition, that said plaintiffs are tenants in common with said defendant; that the latter is in possession of said land; denies plaintiffs' right

and title thereto, and claims to own said land adversely to plaintiffs. The petition concludes as follows:

"Wherefore the plaintiffs pray the court to ascertain and determine the estate, title and interest of the said parties, respectively, in such real estate, and to define and adjudge by its judgment and decree the title, interest and estate of the parties severally in and to such real property.

"And the plaintiffs further pray the court may hear and finally determine any and all rights, claims, interests, liens and demands whatsoever of the parties, or of any one of them, concerning or affecting said real property, and to award full and complete relief by order of sale for partition between the said parties as their interests shall appear, with the same force and effect as the court might or could in any other or different action brought by the parties or any one of them to enforce such rights, claim, interest, lien or demand, and for all necessary and proper relief at law or equity."

Defendant in his answer denies every allegation in said petition, except that which alleges he was in possession of said land and claims the same adversely to plaintiffs. The answer avers that plaintiffs and each of them claim and assert title to said real estate; that their said claims are adverse and prejudicial to the title and interest of defendant in and to said property. The answer then concludes as follows:

"Wherefore defendant prays the court to try, ascertain and determine the estates, title and interests of defendant and plaintiffs of, in and to the real estate above described, and by its decree to adjudge, determine, settle, quiet and define the respective rights, titles, interests and estates of defendant and plaintiffs to said property; and defendant further prays that if the court finds that he is sole owner of the real estate hereinbefore described that an order and decree be entered of record forever barring and precluding the

plaintiffs, and each of them, as well as all persons claiming by, through or under said defendant, from hereafter setting up any title or claim to said property, for all proper orders and relief in the premises.''

A jury was waived and the cause tried by the court. The latter found the issues in favor of plaintiffs, and decreed that the latter were entitled to five-sixths, and defendant to one-sixth, of said property through conveyances and encumbrances made by John H. Hart, son of Catherine J. Hart, in his lifetime. The court, in accordance with the pleadings, ascertained that said property could not be partitioned in kind, and hence directed the sale of same, etc. The land was sold, the sale approved, and judgment was entered accordingly. Defendant duly appealed from said decree, and contends that on the facts disclosed by the record, John H. Hart, and those claiming under and through him, acquired a good title to said real estate by adverse possession, and that by reason thereof defendant is the legal owner of all said property. On the other hand, it is insisted by respondents that the record discloses that plaintiffs and said John H. Hart were tenants in common; that the latter did not hold said property adversely to plaintiffs; that some of the plaintiffs were in possession of said land within ten years before the commencement of this action, and that by reason thereof said defendant has not acquired title to said property by adverse possession, etc.

The facts necessary to a decision of the case will be considered with the opinion.

As a *general* rule the possession of one tenant in common is the possession of all, but there are *exceptions* to this general rule. If the cotenant is in possession, deals with the property as absolute owner, knowingly encumbers the same by mortgage or deed of trust, and by his acts conveys to the public the impression that he is holding adversely

.Tenancy in Common: Adverse Possession.

to his co-owners, he may, under such .circumstances, acquire a good title by adverse possession in ten years. [Allen v. Morris, 244 Mo. 357; Nickey v. Leader, 235 Mo. 1. c. 30-43; Hendricks v. Musgrove, 183 Mo. 300; Dunlap v. Griffith, 146 Mo. 283.]

Let us turn to the record for the facts. The evidence tends to show that Catherine J. Hart died intestate, November 9, 1879, the owner of the .50 acres in controversy, in Camden county, Missouri.

Evidence.

At the time of her death, John H. Hart was about 16 years of age, and inherited through his mother one-sixth of said 50 acres. The remaining five-sixths belonged to plaintiffs. George Hart was in possession of the 50 acres at the time of his mother's death, and continued to cultivate it until he moved away in 1885. John H. Hart had been living on the land with George until the latter left. John remained on the place after George left. The latter raised a crop of wheat on part of the 50 acres in 1903. He never paid John any rent, nor did John pay any rent for the place. George Hart, on cross-examination by defendant's counsel, testified in respect to the 50 acres in controversy, as follows:

"Q. When you had a part of it in wheat, didn't you rent it from John H. Hart? A. No, sir; we sold the wheat together, him and me cropped together and divided it; I threshed it myself with my own thresher.

"Q. What year was that? A. 1903; I lived then upon the big Niangua, near where I now live."

George further testified, upon cross-examination: "John Hart and my brother Marshall never claimed this land as their own at any time in his life."

Marshall Hart testified:

"Q. Well, have you any knowledge or has anybody called your attention, or the attention of the other heirs, to the fact that John H. Hart was claiming that land against the rest of the heirs? A. No, sir; I don't reckon he was; he never claimed it to me."

Leaving out of consideration the deeds of trust hereafter mentioned, there is nothing in the record which tends to show that John H. Hart ever made any claim of *sole* ownership to any of the plaintiffs or to any other person. He was only one of six heirs and there was no reason for his asserting title to that which clearly belonged to his brothers and sisters.

He was not of age when the first deed of trust was given for $65, in 1884. There is no evidence that John *knew* he was conveying anything but his one-sixth interest in any of the deeds of trust given by him. The record does not show that John had any actual knowledge he was conveying anything more than his one-sixth interest in said property. Judge Lea, who loaned the boy this $65, does not claim that he relied upon the fact that John was the sole owner of said land. Some of these plaintiffs were the near neighbors of Judge Lea, and yet he does not claim to have made the slightest effort to ascertain from them, or either of them, whether John owned any other than a one-sixth interest in said land.

This suit was brought in May, 1911. The uncontradicted evidence of George Hart discloses that he and John were jointly cultivating this land in *1903*, as tenants in common. They cropped together and divided the wheat. George testified positively that he did not rent the land from John. The record is utterly barren of facts tending to show any actual intention upon the part of John to appropriate the interests of his brothers and sisters, or to exclude them from the joint use of said land whenever they desired to use the same. We are not satisfied that the facts disclosed by the record herein bring home to these plaintiffs either actual or constructive notice that John had changed, or attempted to change, his friendly holding, as tenant in common, to that of a *hostile* holder, without at least some semblance of claim upon which to base it. But regardless of our views upon the foregoing question,

we are of the opinion that defendant has failed to show a valid title by adverse possession, and that the finding and judgment of the trial court should be affirmed.

The equities of the case are clearly with the respondents, and the judgment below is accordingly affirmed. *Brown, C.,* concurs.

PER CURIAM.—The foregoing opinion of Railey, C., is adopted as the opinion of the court. All the judges concur, *Bond, J.,* in result.