**Lloyd REPLOGLE, Plaintiff-Appellant,**

v.

**O. A. REPLOGLE, Defendant-Respondent.**

No. 48514.

Supreme Court of Missouri,
Division No. 1.

Nov. 13, 1961.

Haymes & Haymes, Marshfield, for appellant

Williams & Miller, Roy C. Miller, Springfield, for respondent.

HYDE, Judge.

Action for partition. Defendant claimed title by adverse possession, asking determination of title and declaration that he was owner in fee simple. The court entered judgment for defendant and plaintiff has appealed.

By stipulation the parties agreed on the following facts.

"1. The plaintiff and defendant are brothers, being the only children and heirs of Aca Replogle, deceased, who died intestate May 14, 1937, and was at his death the owner of the entire part of the land here in controversy.

"2. At the time the father died the plaintiff had been absent from Webster County in excess of seven years. During this period his whereabouts were unknown to this defendant.

"3. On March 24, 1938, after defendant had complied with the provisions of law resulting in the Probate Court of Webster County, Missouri declaring the plaintiff to be a person presumed to be dead, letters of administration were granted to defendant upon plaintiff's estate. A one-half interest in the land here in question was inventoried by defendant as a part of plaintiff's estate. Notice of appointment was published and final settlement was made by defendant as administrator on May 12, 1939. No sale of the real estate was made by the administrator as part of the administration.

"4. Defendant has been in the actual, open and notorious, exclusive, continuous and visible possession the entire amount of the land in question since the death of the father on May 14, 1937, and still remains in such possession.

"5. During all the time since May 14, 1937, defendant has paid all taxes on said property and has paid for such insurance as there has been on the buildings and with defendant's name being the only one appearing on the tax books and insurance records since that time."

The issue to be tried was whether or not defendant's possession was hostile under an unequivocal claim of right. Defendant concedes that he had the burden of proof on this issue. (See Hamburg Realty Co. v. Walker, Mo.Sup., 327 S.W. 2d 155; Gaskill v. Cook, Mo.Sup., 315 S.W. 2d 747; Krumm v. Streiler, Mo.Sup., 313 S.W.2d 680.) For the reasons hereinafter stated, our view is that a finding for defendant on this issue is sufficiently sup-

ported by substantial evidence and is not clearly erroneous.

The only evidence (except agreed facts and documentary evidence consisting mainly of probate files) was the testimony of defendant. Defendant's purpose for administration under the presumption of death statutes (then Secs. 265–272 and 1709 RS 1929 [now V.A.M.S. §§ 473.697–473.720, 490.620]) was his understanding (based on advice of counsel) that at the end of such administration the land would be his. The only assets administered amounted to $69.-90 personal property which was $1.85 less than costs of administration. The parties' father lived on the land (222 acres) and about 1927 defendant moved on it with his father's permission, building a separate small residence. Both defendant and his father separately owned cattle and farmed separately. After his father died and the administration of his brother's estate (on presumed death) was completed, defendant moved to the larger house where his father had lived. He first took down the old barn and built a new one and built two rooms and a porch onto the dwelling occupied by his father before his death. He also moved his former dwelling and converted it into a barn. Thereafter, defendant did more remodeling to the dwelling, rebuilt a barn after it was destroyed by a cyclone, doubled the size of the chicken house, built a machine shed in 1945, built a brooder house in 1946, drilled a well and installed a pressure system at the father's former dwelling in 1946 or 1947, built a mile of new fencing and cleared about 100 acres. Defendant also on April 16, 1951, executed an easement deed (signed by himself and wife) to Sho-Me Power Corporation for a transmission line easement across the land. This suit was commenced May 20, 1960.

Plaintiff contends that defendant's possession must be considered conditional and permissive, pointing out that it was permissive during their father's lifetime, and also arguing that administration of a presumed decedent's estate is a conditional proceeding, based on uncertainty and could not start the statute of limitations running against plaintiff, citing Buck v. McMinn, Mo.Sup., 300 S.W. 497, in which we said there was substantial evidence to support the trial court's finding of conditional claim; Golden v. Tyer, 180 Mo. 196, 79 S.W. 143, also in which there was evidence to show possession was not adverse so that the trial court's finding was not disturbed; Hunnewell v. Burchett, 152 Mo. 611, 54 S.W. 487, where the evidence conclusively showed the possessor did not claim the land adversely to the true owner; other cases cited by plaintiff in which the trial court's finding of no adverse possession was affirmed are Chapman v. Kullman, 191 Mo. 237, 89 S.W. 924, and Seibert v. Hope, 221 Mo. 630, 120 S.W. 770. In this case, the trial court found defendant's possession was hostile and adverse; and as we view it there was substantial evidence to support that finding. The presumed death proceedings then authorized by Secs. 265–272, RS 1929, provided for security for refund to be given by those entitled to distribution (Sec. 270) and for revocation of letters (Sec. 271) with substitution of the supposed decedent in all actions. However, land would not be involved in such proceedings unless required to pay debts which was not true here. It is the character of defendant's possession, and not the probate proceedings, that must be decisive here.

■ Plaintiff also says it was error to permit defendant to testify as to what he was told concerning the legal effect of this administration. This was not offered for the truth of the advice but only as a basis for defendant making a claim of ownership, tending to show intent to possess under a claim of right. (See 2 C.J.S. Adverse Possession §§ 223a, 225a; 20 Am.Jur., Evidence, Secs. 337–339.) Plaintiff further contends that defendant is bound by his admission that he was claiming full title to the land solely because of the administration on his brother's estate. This is based on the following question and answer on cross-examination. "Q. Now, the only

claim that you have made to being sole owner of that place is because of these probate proceedings that you instituted on your brother's estate, is that right? A. That's right." This was explained on re-direct as follows: "Q. Have you claimed to be the owner ever since the probate proceedings? A. After them. Q. You didn't or you hadn't made any claim to ownership to all of it before the probate proceedings? A. No, sir." Our view is that the court could reasonably find that this administration was the basis for defendant making a claim of ownership; that his claim commenced at the termination of these proceedings; that his possession thereafter was hostile; and that his use and improvement of the land thereafter were unequivocal acts of ownership.

As to tenants in common "the general rule is that such a tenant or such an heir presumptively holds possession for his cotenants or coheirs. See Mann v. Mann, 353 Mo. 619, 183 S.W.2d 557; and Humphreys v. Welling, 341 Mo. 1198, 111 S.W.2d 123. But under certain circumstances such a tenant in possession may hold adversely to his cotenants or coheirs and, after such adverse possession for the statutory period, may invoke the statute to defeat the claims of his cotenants or coheirs. Hart v. Eldred, 264 Mo. 148, 174 S.W. 380; and Nickey v. Leader, 235 Mo. 30, 138 S.W. 18." (Hunter v. Hunter, Mo. Sup., 237 S.W.2d 100, 102; see also Warfield v. Lindell, 30 Mo. 272; Coberly v. Coberly, 189 Mo. 1, 87 S.W. 957; Mann v. Mann, 353 Mo. 619, 183 S.W.2d 557; 1 Am.Jur., Adverse Possession, Secs. 52–57; 2 C.J.S., Adverse Possession, Sec. 99; 86 C.J.S. Tenancy in Common §§ 37–38.) It is said (1 Am.Jur. 825): "[W]here one cotenant occupies the common property notoriously as the sole owner, using it exclusively, improving it and taking to his own use the rents and profits, or otherwise exercising over it such acts of ownership as manifest unequivocally an intention to ignore and repudiate any right in his cotenants, such occupation or acts and claim of sole ownership will amount to a disseisin of his cotenants, and his possession will be regarded as adverse from the time they have knowledge of such acts or occupation and of the claim of exclusive ownership."

We have held "that it is not 'necessary that any positive notice should be given to the cotenant, or that it devolves upon the possessor to prove a probable actual knowledge on the part of the co-tenant. It is sufficient that the act itself is *overt, notorious;* and if the co-tenant is ignorant of his rights or neglects them, he must bear the consequences.' " (Mann v. Mann, 353 Mo. 619, 183 S.W.2d 557, 560; see also Hendricks v. Musgrove, 183 Mo. 300, 81 S.W. 1265.) In 1 Am.Jur. 827, it is said: "The knowledge required may arise from actual notice, as in the case of a disavowal or disclaimer by the adverse possessor of any right in his cotenants, or it may arise from acts or circumstances attending such adverse possession, which are overt, notorious, and unequivocal in their character and import." It is also said (86 C. J.S. Tenancy in Common § 38, pp. 397–398) : "[T]he notice may be express or implied or constructive, as from conduct so unequivocal that knowledge on the part of the tenant out of possession may be presumed, as where the adverse possession is so open, visible, and notorious as to charge the tenants out of possession with knowledge of the hostile claim. * * * Making valuable improvements, retaining all rents and profits, or paying the taxes by a tenant in long-continued and undisturbed occupancy, if with knowledge of his cotenants, may operate as notice of claim of ownership of the entire property, if done after the manner which obtains generally in cases where absolute ownership is asserted."

In the Hunter case (237 S.W.2d 100) there had been administration in 1930 by one brother of the estate of the other brother, who was under life sentence in

the penitentiary, based on the civil death statute, then Sec. 12968 RS 1929 and Sec. 12972 RS 1929 [now V.A.M.S. § 222.010]. We held this proceeding, in connection with the administration of the father's estate (involving only personal property) and the later administration in 1937 of the mother's estate, showed that the possession of the mother's land then taken by brother, who was administrator of all three estates, was hostile because he was shown as the sole heir in the administration of the last estate and thereafter claimed ownership, took possession of the land, lived on it and improved it. Plaintiff says that case is inapplicable because there was actual notice to the convict of his brother's claim but as the above authorities show actual notice is not essential where there are unequivocal overt acts of ownership sufficient to indicate a hostile claim.

Our conclusion here is that the court could reasonably have found the facts here were as strong to show hostile possession as those in the Hunter case and were continued over twice as long a period. The administration herein under the presumed death statute, whatever its actual effect may have been, was clearly for the purpose and with the intent of eliminating plaintiff's interest in the land and defendant's evidence sufficiently shows that thereafter he believed he owned it, claimed to own it and exercised unequivocal acts of ownership over it of an overt, notorious character sufficient to constitute notice of his claim. Defendant and his lawyer made considerable effort to find his brother before the presumed death administration was begun and he undoubtedly believed his brother was dead. Thereafter he exercised the most positive acts of ownership in remodeling and enlarging the house and moving into it, in building new farm buildings and new fences, clearing much of the land, farming it, keeping all proceeds, paying all taxes and insurance in his name only for more than 20 years and making a conveyance of an easement as the sole owner. These circumstances following the probate proceedings, seem to us to make a strong case of implied or constructive notice of defendant's claim of sole ownership sufficient to support the court's finding of title by adverse possession.

The judgment is affirmed.

All concur.